Oliver Lowy, Assistant Federal Public Defender for Mr. DelaRosa, may it please the Court. I'd like to reserve two minutes for rebuttal, if I may please. Sure. Anthony DelaRosa was only 17 years old at the time of the offense. When he entered his guilty plea, he was housed in a youth facility where he was pursuing his high school diploma. He entered his guilty plea in reliance on false promises and misrepresentations, affirmed and made by trial counsel, that he would serve his five-year sentence at a youth facility. But serving his sentence in an adult prison, Anthony was for five years in daily fear, and worse, for his safety and without the support and guidance provided by youth facilities, precisely what he had bargained to avoid. On this extremely rare, if not unique, set of facts, this Court should determine that the District Court erred in denying habeas relief, vacate the conviction, and remand with instructions that the District Court order the State to convey the same plea offer to Anthony, but of course without the illegal provision. Not requiring the State to convey the five-year offer would place Anthony at risk of going back to prison, rewarding the State with a windfall after it had misled Anthony in the first place. Let me ask you, so we're in the world of 2254? Correct. And you argue 2254d-2, unreasonable determination of the facts. Yes. Interestingly, the State, when they responded, they emphasized 2254d-1, unreasonable application of settled Supreme Court law. Tell me, why was there an unreasonable determination of facts, and what were they? What was wrong? I'm sorry? What was wrong with the factual finding of the, I believe we're reviewing the State Post-Conviction Habeas Court. Correct. What was wrong with the fact finding, and what makes it unreasonable, is the Post-Conviction Court found that there was no promise made to Mr. De La Rosa. That there was no promise made by the Post-Conviction Court. That the District Attorney did not, in fact, make any promise to Mr. De La Rosa, regarding where he would serve his time. And that trial counsel had, in fact, not guaranteed Mr. De La Rosa that, pursuant to the plea, he would serve his time in a youth facility. What makes those unreasonable findings of fact, by the State Post-Conviction Court, is that the record contradicts each of those. One, so substantively, the Post-Conviction Court just got it wrong. You cannot read the colloquy for the guilty plea, and conclude that a promise was not made. The court, in fact, tells Mr. De La Rosa, in the colloquy, that the deal, quote-unquote, was that he would serve his time in a youth facility. The Post, excuse me, the... Let me, can I ask you one question about the judge's role in this? Yeah. The judge undertook a pre-plea settlement conference. Correct. And then later on, during the post-conviction proceedings, the parties were able to take the judge's deposition. In that deposition, the judge testified. He didn't recall exactly what he said, but he had his customary practice, never to say that he could, that he had the authority to authorize where somebody could serve their sentence. I think it's something, he said something to that effect, if I remember correctly. I think that's correct, Judge. I think that's a fairly good position. And the state post-conviction court placed some weight on that. What role does that have in the unreasonable determination of the facts? Well, first, the trial judge testified that it was his, quote-unquote, policy to do this at settlement conferences, that he had no specific recollection of this case, but because it was his policy, he would infer that, in fact, he did that in this case. Second, regardless of what happened at the settlement conference, one step along the way, of course, of negotiations to a guilty plea, at the guilty plea, the judge promised Mr. De La Rosa that he would, if he entered in exchange for the guilty plea, that he, the court, would order that he serve his time in a youth facility. He says that unmistakably on the record to Mr. De La Rosa. So that he may have said something, which is speculative, but that he may have said something at the settlement conference is trumped by what is, in fact, said to Mr. De La Rosa on the record at the calling. In addition to which, it may be worth noting that trial counsel, at the motion to withdraw the plea argument, notes that both she and Mr. De La Rosa believe, at the time of the plea calling, that he would, in fact, be ordered to serve his time at the youth facility. And the reason I raise that is, again, regardless of what was said in the settlement conference, by the time the parties get to the courtroom for the plea calling plea, in other words, after further negotiation, it is understood by everyone that Mr. De La Rosa was to be ordered to serve his time in a youth facility, which, of course, did not happen. That order did not come from the court. The court instead ordered that he serve his time in the Department of Corrections in the written order, which brings us to the first case. Do you also argue that he's entitled to relief on D-1? I'm sorry, could you repeat that? Do you also contend that your client's entitled to relief under 2254 D-1, unreasonable application of Strickland, Fry, Hill, Padilla? Yes, I do. That is what we are traveling under. I'm sorry. I'm sorry. I said D-1. D-1 is an unreasonable application of clearly established Supreme Court law. Yes, and I'm sorry, what was the question, Judge? I did mishear you, so now I'm wondering what your question is again. Do you contend or do you argue that he's entitled to relief under D-1, even if he's not entitled to relief under D-2? Well, Judge, I do think he's entitled to relief under D-1 as well, though we are traveling under D-2. We do believe that there is clearly established federal law as determined by the Supreme Court. Lee and, of course, Hilvey Lockhart hold that what matters in a plea is what is critically important to the defendant. And here, it is absolutely clear from the record that it was critically important to Mr. De La Rosa that he spend his time in the youth facility rather than an adult prison. And, again, that is clear from both the fact that that term ends up in the plea agreement. It is gone over by the court, the same court which, as you noted, Judge, had done a settlement conference. That provision is part of the deal, according to the court. Immediately upon learning that he was going to be sent to an adult prison, Mr. De La Rosa filed a motion to withdraw his guilty plea. And at the hearing, again, the trial counsel noted that she had had extensive conversations with Mr. De La Rosa about that plea provision, specifically that in exchange for his plea, the court would, in fact, send him to a youth facility in order that he spend his time in the youth facility, all of which point out that it was critically important to Mr. De La Rosa that he serve his time at a youth facility. With that understanding, that that was critically important to Mr. De La Rosa, it clearly figures into whether Mr. De La Rosa had proved prejudiced. Did you want to save some time for Rupo? I do. Thank you, Judge. I'll give you another minute on top of that. Can I say, are you giving me another minute now? No. No? Okay, thank you. I'll give you a minute on top of the 29 seconds you have left. So you'll have one minute and 29 seconds. Okay, let's hear from the states. Good morning, Your Honors. May it please the court, counsel. And, Your Honor, Judge Paz, your first question was about how Petitioner understood his challenge and what he was focusing a D-1 argument as opposed to a D-2 argument on. And I'll just let the court know what my understanding was of his claims. And my understanding was that sort of the threshold claim about whether the Sixth Amendment applies at all was a D-2 argument. It was more focused on the legal conclusion because there really are no facts that are disputed about that. So I approached that as purely as a legal argument. I did understand his argument about the first prong of Strickland to challenge the factual findings that he said about whether the trial judge – about the trial – adopting the trial judge's representation that he would not have promised Petitioner that it was going to be a certainty that he did his time at OYA. And then, as to prejudice, my understanding was he was challenging the legal conclusion – or, sorry, that Petitioner was not credible in his statement under Hildy Lockhart that he would have taken the deal had he known that it was uncertain, only a recommendation rather than a guarantee that he would do his time at OYA. So that was my understanding, and having sort of framed it that way, I can go from there. I didn't hear Petitioner offer any argument about why this was not a collateral consequence and how clearly established Supreme Court law allowed for an IAC claim to be attached to a collateral consequence – advice regarding a collateral consequence that was not in the immigration context. Hildy Lockhart involved affirmative misadvice about parole eligibility, and in that case, the U.S. Supreme Court said, we're not going to decide whether this is a collateral consequence that falls outside of the Sixth Amendment, and then they moved on to prejudice. Let me ask you, wasn't this a material aspect of his plea negotiations? It may have been. I don't think it is – I don't know that it would be a material aspect if you were looking sort of at a breach due process analysis, which wouldn't be the question here. The question is whether counsel fulfilled his constitutional – her constitutional obligation to adequately advise, and if it's a collateral consequence, whether it might be material to defendant or petitioner for whatever reason, the Sixth Amendment simply does not apply under clearly established law to advice offered about a collateral circumstance. And I know Petitioner's argument is that, well, affirmative misadvice is an exception to that. That may be true in the Ninth Circuit, but the Supreme Court has twice had the opportunity to decide that issue, once in Hildy Lockhart, which in Chaidez, it said the Supreme Court did not decide that issue. And in fact, the Supreme Court did not decide that whether advice, no matter how ineffective or how prejudicial, could ever be a Sixth Amendment claim if it was a collateral circumstance. So Chaidez said that's what Hildy Lockhart held. And then went on to say – because in Chaidez, of course, it was whether it was a new rule and whether it was subject to retroactive application, which is relevant here to show whether it was clearly established law. And what the court said is Padilla decided in one instance in immigration that Strickland would apply. But the analysis with collateral consequences is that if it doesn't – that if it is a collateral consequence, it falls outside of the Sixth Amendment to Mr. Strickland's analysis. So your argument is, is that if – assume for a moment that the defense counsel advised Mr. De La Rosa when he was considering whether or not to accept the plea offer, that she told him, you're going to serve your time at the Oregon Youth Authority. He says, great, I'll take it. That's not – your argument is that that's not covered by Hill? No. And in fact, Hill, it was – the problem was, is that counsel assured the petitioner in that case that he would only – that he would be parole-eligible after serving a third of his sentence. But that was wrong because he had a felony conviction. So in fact, he had to serve half of his sentence. So that was affirmative misadvice about a pretty important aspect of his sentence, you know, how long he would have to serve before being parole-eligible. That is at least as important as this collateral consequence. And it was affirmative misadvice, as your hypothetical suggests here. And the court said, we are not considering that question, whether it is ever subject to the Strickland analysis. So really, Hill v. Lockhart is no different in this case. Counsel, how can this be a collateral consequence when it involved the decision whether to plead guilty and the decision to waive juvenile court jurisdiction? How can that be collateral to the conviction in this case? Because the U.S. Supreme Court and the lower courts have said that – well, in fact, this court has said in Tory v. Estelle that OIA placement is a collateral consequence to the criminal conviction. And so this court has already said that. And the law is – or at least it's unsettled in the U.S. Supreme Court as to whether any collateral consequence can ever be the stuff of an ineffective assistance claim. That answers the question. Go ahead. If the court doesn't have any more questions about that argument, I just – since Petitioner hadn't mentioned it, I wanted to touch on it. I think moving to what I believe is the – another strong argument that really wasn't discussed is the trial court's finding that Petitioner would not have accepted the offer or just disbelieving that he would have rejected the offer and gone to trial had he thought it was a recommendation and not a certainty. The case law is pretty clear, and I believe Hill says this, that if you have – if you're facing long odds in going to trial and there's a good chance of conviction, that's pretty good evidence to show that you – to show that you wouldn't have taken the deal and gone to trial. Now, Petitioner cites, I think, two pieces of evidence for saying he satisfied his burden to show that. And one is that the motion to withdraw hearing. I would just note, as I said in the brief, that at the time of the motion to withdraw hearing, Petitioner already had the knowledge that he would not be going to OIA. So what that shows is after he knows that it's an uncertainty that he absolutely will not go to OIA, then he wants to withdraw his plea and go to trial, which is different than having – if he had properly understood the deal, that it was only a judicial recommendation that he be placed there, at least then he would have the chance of doing it. So it's a different choice altogether. Also, in his deposition, when he did make statements that he would have not taken the deal and gone to trial, he also made statements such as one of the first things he told his attorney is, I want to get this out of Measure 11. Measure 11 is, of course, Oregon's mandatory sentencing statutory scheme. And that was one of his big goals was to get it out of Measure 11 at first. And when asked who came up with this condition, this idea about staying in OIA, Petitioner said that the judge and the DA and his attorney came up with the idea. So this wasn't something that Petitioner was sort of asking for on his own from the beginning, which also shows that he was not credible in saying that this was the most important thing and would have risked – that he would have risked exposure to 30 more months, which would have been the mandatory sentence had he been convicted of the first-degree kidnapping as originally charged. He would have not gotten OIA. There would have been no chance of OIA had he been convicted on that Measure 11 count, or been able to participate in any programming during his sentence. So looking at those consequences, the post-conviction court, and after considering Petitioner's deposition testimony, the post-conviction court reasonably concluded that Petitioner was not credible in saying that he would not have taken the deal and gone to trial. Mr. Rios, one question. If the habeas petition is granted, what is an effective remedy in this case? So the effective remedy is this court mostly has control over release. That's the main authority that the federal courts have over the state courts. There's a lot of cases that caution against intervening in state court matters or revising a judgment, which I submit Petitioner's proposed remedy would be. I mean, it would be not specific. So the superintendent admits that specific performance and allowing Petitioner to withdraw his plea are, in a general sense, appropriate remedies in this context. But now that Petitioner has finished his sentence, and that's not an option anymore, he would be getting a windfall if he got his convictions vacated or forcing the state to resubmit the plea without the OIA condition. Then again, I didn't quite catch that. If he were to prevail here, why wouldn't the relief be given the opportunity to withdraw his plea? If he does, you can prosecute him. Oh, no, I think if that's true, that's right. I'm just saying I don't agree with the remedy of because I think Petitioner's proposed remedy was having the state reoffer the plea without the condition or going to trial. Well, I didn't hear the or going to trial part from Petitioner, but just the alter the plea. Now, I don't disagree that if it was sent back and the state was given a chance to reoffer the plea, they certainly could reoffer the plea without the OIA condition, or they could retry him. But if this court were to conclude that there was another remedy other than release or conditional writ that would say release Petitioner or do these things within a certain amount of time, if this court said that the federal courts would have the authority just to send it back with instructions without introducing release because release is moot at this point, would be to say that the state can retry him or give another or come up with another plea officer, basically put him status quo ante to where he was. Okay, thank you. Thank you very much. We just ask that you affirm the denial of a relief. One minute and 29 seconds for rebuttal. Counsel, you need to turn off. Thank you very much, Joe. Okay. The state just suggested that it would be a windfall for Mr. De La Rosa should he be granted relief and an order that the state reoffer the plea, the five years. And I would note that I'm not sure Mr. De La Rosa would find it a windfall having served five years in an adult prison starting at age 18, having been promised, of course, a juvenile facility and having suffered all the consequences of being in an adult prison. With regard to the affirmative misadvice, which the state was arguing, has not been decided by the Supreme Court. While it has not been decided by the Supreme Court, this court decided in Chan that affirmative misrepresentations, regardless of their subject matter, would be deficient performance under Strickland. So I think this case— Under D1, we're obligated to apply clearly established law by the United States Supreme Court. Yes, we're traveling under D2. And even under D1, Strickland has been interpreted by this court to mean that it is deficient for trial counsel to make affirmative misrepresentations. And clear Supreme Court case law holds that circuit courts may, in fact, interpret Supreme Court case law in this manner. And this court, of course, is bound by Chan. Tory v. Estelle, which the state cites, is about future release, not about where someone is promised to go in exchange for a guilty plea. It also is about California law. Three, with regard to prejudice, the state argues essentially buyer's remorse, ignoring, of course, that it's not buyer's remorse. This is not a situation where someone decided, oh, I don't like the plea that I agreed to. It's a situation where the plea that he agreed to, in fact, was not effectuated by the court. Okay. The go-ahead, you're over your 1 minute and 29 seconds. We appreciate your rebuttal. Thank you, John. Okay. Thank you. Counsel, we appreciate your arguments this morning, and the matter will be submitted at this time. Thank you.
judges: Paez, Watford, Tunheim